**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Anthony Boyce (R52162), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 13 C 6832 |
| v. | ) | |
| | ) | |
| | ) | |
| Ada Johnson, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

AMY J. ST. EVE, District Court Judge:

Plaintiff Anthony Boyce, an inmate of the Illinois Department of Corrections ("IDOC"), brought this 42 U.S.C. § 1983 action against correctional officials and health care providers at Stateville Correctional Center, alleging that Defendants were deliberately indifferent to his safety and serious medical needs. Before the Court are Defendants' motions for summary judgment, one filed by the correctional officials ("IDOC Defendants"), and another filed by the health care providers, who Wexford Health Sources, Inc. employed ("Wexford Defendants"), and Plaintiff's "motion to strike a particular part of pliffs response to defendants summary judgment." For the following reasons, the Court grants the Wexford Defendants' motion in its entirety and dismisses Defendants Dr. Carter, Mark Hale, and La Tanya Williams as Defendants to this lawsuit. The Court grants in part and denies in part the IDOC Defendants' motion for summary judgment. Plaintiff's motion to strike is denied as moot because the portions of his responses that Plaintiff referenced in this motion did not enter into the Court's summary judgment analysis.

## BACKGROUND

### I.      Northern District of Illinois Local Rule 56.1

Local Rule 56.1 "is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted).   Under Local Rule 56.1(a)(3), the moving party must provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Petty v. City of Chicago*, 754 F.3d 416, 420 (7th Cir. 2014).   *See also Ammons v. Aramark Unif. Servs., Inc*., 368 F.3d 809, 817 (7th Cir. 2004) (quoting N.D. Ill. L.R. 56.1(a)); *see also* Fed. R. Civ. P. 56(c).   The opposing party must then "file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon.'" *Cracco v. Vitran, Exp., Inc*., 559 F.3d 625, 632 (7th Cir. 2009) (quoting N.D. Ill. L.R. 56.1(b)(3)(B)).   The opposing party may also present a separate statement of additional facts that requires the denial of summary judgment.   *See Ciomber v. Coop. Plus, Inc*., 527 F.3d 635, 643 (7th Cir. 2008) (citing N.D. Ill. L.R. 56.1(b)(3)(C)).   A court may consider true any uncontested fact in the movant's Rule 56.1 Statement that is supported by the record and is not addressed by the opposing party.   *Raymond v. Ameritech Corp*., 442 F.3d 600, 608 (7th Cir. 2006); *see also* Fed. R. Civ. P. 56(e)(2); Local Rule 56.1(b)(3)(C).

"District courts are entitled to expect strict compliance with Rule 56.1." *Ciomber*, 527 F.3d at 643 (citations and internal quotation marks omitted).   A plaintiff's *pro se* status does not excuse him from complying with these rules.   *Greer v. Bd. of Educ. of City of Chicago,* 267 F.3d

723, 727 (7th Cir. 2001); *Cady v. Sheahan,* 467 F.3d 1057, 1061 (7th Cir. 2006) ("even *pro se* litigants must follow rules of civil procedure"). Thus, the Court construes his filings liberally. *See Ambrose v. Roeckeman,* 749 F.3d 615, 618 (7th Cir. 2014). The Court notes, however, that Boyce is an experienced litigant, having brought at least nine other lawsuits here. *See Boyce v. Godinez,* No. 12 C 3840; *Boyce v. Carter,* No. 12 C 5372; *Boyce v. Gray,* No. 13 C 2967; *Boyce v. Obaisi,* No. 13 C 5746; *Boyce v. Martella,* No. 13 C 6526; *Boyce v. Obaisi,* No. 13 C 5746; *Boyce v. Obaisi,* No. 14 C 418; *Boyce v. Madigan,* 15 C 7580; and *Boyce v. Madigan,* No. 15 C 9268.

As contemplated by Local Rule 56.1, the IDOC Defendants and the Wexford Defendants each filed a statement of uncontested material facts supporting summary judgment in their favor. (IDOC Defs. Stmt. of Fact, R. 189 ("IDOC SOF"); Wexford Defs. Stmt. of Fact, R. 195, ("Wexford SOF"). All Defendants also filed and served on Boyce a Local Rule 56.2 Notice, which explains in detail the requirements of Local Rule 56.1. (R. 191, 196.) The Court also has previously explained to Boyce in detail the requirements of the local rule. *See Boyce v. Carter,* No. 12 C 5372, 2014 WL 4436384, at *1-2 (N.D. Ill. Sept. 8, 2014).

Boyce filed several documents, which consist of multiple sub-parts, in response to Defendants' motions. As is relevant here, Boyce filed responses to both sets of Defendants' statements of uncontested fact. ("Plaintiff's Opposition to [IDOC Defendants'] Statement of Uncontested Facts," R. 199 at 1-5 ("Pl. Resp. IDOC SOF"); "Plaintiff's Opposition to Defendant Material Fact [of Wexford Defendants]," R. 200 at 13-18 ("Pl. Resp. Wexford SOF")). Plaintiff also submitted statements of additional facts. (Plaintiff's Set of Additional Material Facts [as to IDOC Defendants], R. 199 at 6-10 ("Pl. IDOC SOAF"); Plaintiff's Set of Additional Material Facts [as to Wexford Defendants], R. 200 at 18-20 ("Pl. Wexford SOAF").) In addition, Boyce

submitted two declarations (R. 199, at 11-19, 20-26) and approximately 200 pages of exhibits (R. 200, at 21-221).

Plaintiff admits many of Defendants' uncontested facts.   Specifically, he admits the facts contained within paragraphs 1-7, 9-10, 12, 16, 18-19, 29-30, and 32-35 of the IDOC Defendants' statements of uncontested fact.   (Pl. Resp. IDOC SOF.)   As to the Wexford Defendants' statement of uncontested fact, Plaintiff admits the facts contained in paragraphs 1-7,[1] 12-14, and 34.   (Pl. Resp. Wexford SOF.)   The Court, therefore, takes these facts as true.

Plaintiff purports to deny the remainder of Defendants' uncontested facts.   As to these statements, the Court will not deem a fact uncontested where the Defendants' statement of that fact does not comply with the requirements of Local Rule 56.1 or lacks evidentiary support.   (*See e.g.*, IDOC SOF ¶ 13, 15.)   As to Defendants' compliant statements of fact, Boyce cannot create genuine issues of material fact by relying upon legal arguments, conclusions or suppositions (e.g., Pl. Resp. Wexford SOF ¶¶ 59-69), which do not constitute "facts."   *See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 n.2 (7th Cir. 2008); *see also Almy v. Kickert Sch. Bus Line, Inc.*, No. 08-cv-2902, 2013 WL 80367, at *2 (N.D. Ill. Jan. 7, 2013) ("[C]ourts are not required to 'wade through improper denials and legal arguments in search of a genuinely disputed fact.'") (quoting *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000)).   Further, Boyce may not create genuine issues of material fact through responses that lack specificity and respond generally to multiple statements of fact without being responsive

---

[1] As to number 6, although Plaintiff does not dispute factual content, Plaintiff asks that "ex H not be admitted due to the fact that plaintiff can't admit or deny evidence that's not presented or marked."   Plaintiff appears to have misunderstood Defendants' citation to their "Exhibit C, at page 3, ¶ (H)" as citing an "Exhibit H."   Defendants' citation, however, is to paragraph H of Plaintiff's amended complaint, which is Exhibit C to Defendants' motion.

4

to all material facts raised by Defendants.  (*See, e.g.*, Pl. Resp. Wexford SOF ¶¶ 35-50, 51-58, 59-69).

The Court also will disregard denials that conflict with Plaintiff's sworn deposition testimony.  "[L]itigants 'cannot create sham issues of fact with affidavits that contradict their prior depositions.'"  *Janky v. Lake County Convention & Visitors Bureau*, 576 F.3d 356, 362 (7th Cir. 2009) (quoting *Lorillard Tobacco Co. v. A & E Oil, Inc.*, 503 F.3d 588, 592 (7th Cir. 2007)). Further, the Court will not consider Boyce's disagreements with Defendants' factual assertions where he states only that a fact is "irrelevant" or "immaterial" or where he fails to provide a record citation to contradicting evidence.  (*See, e.g.*, Pl. Resp. Wexford SOF ¶¶ 11, 16, 23-25, 28-33; Pl. Resp. IDOC SOF ¶¶ 20-23.)   Boyce also may not, without demonstrating some source of contrary evidence or personal knowledge of the events, counter Defendants' uncontested facts within their knowledge.   *See* Fed. R. Evid. 602.   Boyce cannot, for example, counter Dr. Carter's statements that he did not review any written request for treatment unless he has an evidentiary foundation for disputing Dr. Carter's representation.   (Pl. Resp. Wexford SOF ¶¶ 51-58.)   Finally, Boyce may not testify as to matters involving medical, technical or other specialized knowledge, *see* Fed. R. Evid. 701, 702; (*see, e.g.*, Pl. Resp. Wexford SOF ¶ 21), although he may point to documents or other evidence by those with such specialized knowledge.

As to the facts Boyce seeks to add to the record to defeat Defendants' motions, *see* Local Rule 56.1(b)(3)(C), he has not followed the Local Rule in several ways.   First, Plaintiff improperly inserted additional facts into his responses to Defendants' Local Rule 56.1(a)(3) statements.  (*See, e.g.*, Pl. Resp. Wexford SOF ¶¶ 9-10, 17-19, 21, 27.)   Such statements must be ignored, even where supported by supporting record citations, because the Local Rule requires that

additional facts be raised through a statement of additional facts under Local Rule 56.1(b)(3)(C). Second, Boyce submits additional facts through his legal briefs. But "facts submitted in a brief but not presented in a Local Rule 56.1 statement are disregarded in resolving a summary judgment motion." *Beard v. Don McCue Chevrolet, Inc.*, No. 09 C 4218, 2012 WL 2930121, at *5 (N.D. Ill. July 18, 2012). Third, the Court will not consider Boyce's statements of additional facts as raising additional facts because Boyce's statements consist not of factual assertions but of a series of open-ended legal questions beginning with "whether," *e.g.*, "whether Hale reviewed the letters plaintiff sent to his office"; "whether Hale had involvement in drafting the letter plaintiff received," (Pl. Wexford SOAF ¶¶ 1-2), "whether Def Hardy, Godinez, Hardy, Johnson, Mahalick, Burkybile, Loveh, Callous, malicious or evilly tried to harm pliff"; and "whether plaintiff had a serious medical needs of chest pains, freezing or rash." (Pl. IDOC SOAF ¶¶ 15-16.)

Where Boyce has pointed to evidence contrary to Defendants' statements of fact in his responses to those statements, the Court will consider that evidence. The Court will, in general, incorporate Plaintiff's factual assertions to the extent they provide additional facts relevant to the Court's analysis, are supported by record evidence, or are such that Plaintiff properly could testify as to them at trial. The Court further will rely upon Plaintiff's references to exhibits where they are relevant to the Court's analysis and may be admissible at trial. The Court will not, however, dig through the record to identify disputed issues of fact. *See Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007) ("In considering a motion for summary judgment, the district court is not required to scour the record in search of evidence to defeat the motion; the nonmoving party must identify with reasonable particularity the evidence upon which the party relies."). With these guidelines established, the Court turns to the facts of this case.

## II.    Relevant Facts

### A.    The Parties

Plaintiff Anthony Boyce is an IDOC inmate, who is serving a life sentence for murder and has also been convicted of attempted solicitation of murder.   (Wexford SOF ¶ 1); *see also People v. Boyce*, 2013 IL App (1st) 102318-U, ¶¶ 1, 4 (Ill. App. 2013), *aff'd* 2015 IL 117 (Feb. 2015).

During the relevant time period, Boyce was incarcerated at Stateville Correctional Center ("Stateville"), (IDOC SOF ¶ 1), and Defendants were officers or employees of IDOC or Wexford Health Sources, Inc.   Salvador Godinez was the Director of IDOC.   (IDOC SOF ¶ 33.)   The remaining IDOC Defendants worked at Stateville:   Marcus Hardy was Warden; Ada Johnson was a placement officer; Lydia Dethrow was a prison counselor; John Louch was Acting Chief Engineer; Mark Mahalik (spelled "Mahailk" in the docket) was an electrician; and Ralph Burkybile was a correctional officer.   (*Id.* ¶¶ 32, 34, 35, 18-19; R. 161-1, Burkybile Resp. to Pl's Interrogatories and Production of Documents ¶¶ 1-2; R. 161-6, Louch's Resp. to Pl's Interrogatories and Production of Documents, ¶¶ 1-2.)   Mahalik appears as the "John Doe electrician" in the amended complaint.   (IDOC SOF ¶ 29; R. 142, 143.)

Wexford is a private corporation that has contracted with IDOC to provide medical services to inmates at various correctional facilities, including Stateville.   (Wexford SOF ¶ 5.) Wexford employed the Wexford Defendants at all relevant times.   (*Id.* ¶¶ 3, 4, 6.)   Defendant Hale, who does not have medical training, was president and chief executive.   (*Id.* ¶¶ 6, 35-36.) Defendant Imhotep Carter, M.D., was employed as a physician and Medical Director at Stateville. (*Id.* ¶ 3.)   Defendant La Tanya Williams, P.A., was a physicians' assistant at Stateville and other facilities.   (*Id.* ¶ 4.)

**B.    Incidents Underlying Boyce's Claims**

Unless otherwise noted, the following facts are undisputed.    On February 23, 2012, Boyce was moved to segregation in Stateville's F-house, cell 122 ("cell F122"), where he remained until on or about May 18, 2012.    (IDOC SOF ¶¶ 1-3; Wexford SOF ¶ 12; R. 199, Pl. Decl., ¶ 2.) Plaintiff was dissatisfied with several conditions of cell F122.    First, the window was dysfunctional.    (IDOC SOF ¶¶ 4, 12.)    Second, the mattress was soiled.    (*Id*. ¶ 5, 10.)    Third, on February 24, 2012, the day after he moved into cell F122, the electrical socket malfunctioned. (IDOC SOF ¶¶ 6-7.)    Plaintiff states that he was injured as a result of this malfunction. (Wexford SOF ¶ 20, Ex. F at 2.)

**1.    Dysfunctional Window**

Boyce now "has reason to believe" that the window in cell F122 "was cracked, it was open, and also . . . it barely sealed straight.    (R. 195-1, Boyce Dep., at 4.)    "[I]t barely opened and shut properly."    (*Id*.)    Cell F122 was therefore "very wintery and cold," and the window allowed "outside elements" into the back of the cell.    (*Id*.)    During the last week of February, when Plaintiff first arrived in F122, outdoor temperatures ranged from 30-60 degrees (apparently Fahrenheit), while the low temperatures varied from 18-36 degrees. (Pl. Resp. IDOC SOF ¶ 13; R. 200 at 65-66.)[2]    In March, outside temperatures (high or low) went below 32 degrees on only seven days, no more than four of which were consecutive.    (R. 200 at 66.)    March high temperatures were above 60 degrees on 22 days (and over 80 degrees on several occasions).    (*Id*. at 66.)    April low temperatures went below freezing on only five days, and high temperatures were above 60 degrees on all but six days.    (*Id*. at 67.)    Boyce wrote letters and grievances to

---

[2] As Defendants have not raised the issue, the Court makes no findings regarding the admissibility of these exhibits at trial.

IDOC Defendants in which he referenced the broken window. (*See, e.g.*, Wexford SOF ¶ 70; Pl. Resp. IDOC SOF ¶¶ 31, 41.)

### 2. Soiled Mattress

Boyce's mattress in cell F122 "smelled like feces, ejaculation and urine" and was "nasty." (Boyce Dep. at 6.) Boyce appears to have had the same mattress throughout his stay in cell F122. (Pl. Resp. IDOC SOF ¶ 14; *see also* R. 59, Am. Compl. ¶ 40.)

### 3. Outlet Malfunction

On February 24, 2012, the day after Boyce moved into cell F122, an electrical outlet (which Boyce frequently refers to as an "electrical shocket") malfunctioned—"[f]ire started shooting up out of" it. (Boyce Dep. at 5.) Plaintiff suggests, although it is not clearly described, that this was a spontaneous event, while Defendants assert that the most frequent impetus of a socket malfunction is when an inmate inserts a foreign object, such as a wire or paperclip, into it.[3] (IDOC SOF ¶ 23.) An electrician, who Plaintiff identifies as Mark Mahalik, repaired the socket on March 15, 2012. (IDOC SOF ¶ 29; R. 142, 143; Am. Compl. ¶ 38.) Although at times Plaintiff described the malfunction as a fire that continued for 21 days (*see* Am. Compl. 59 ¶¶ 28, 38; Pl. Resp. IDOC SOF ¶ 15), Plaintiff backtracked from this characterization in his deposition, saying "at a point, yes, it was flames coming out of the socket. I don't know what you mean – define flames." (Boyce Dep. at 22.) Boyce explained that he did not see flames after that initial malfunction, just smoke; he simply inferred that, "where there's smoke, there's fire," although he conceded that he is "not a fire specialist." (*Id*. at 6, 22-23; *see also id*. at 15.) Boyce testified that, when the malfunction occurred, he burned his hand trying to put out the fire; he did not then see

---

[3] Any factual dispute regarding the cause of the malfunction is immaterial to Boyce's claims that Defendants were deliberately indifferent to the conditions of Boyce's cell because of the malfunction.

flames, however, and is not sure whether he was burned by "fire . . . or the plastic that dripped off the thing." (*Id*. at 22-23.) Although the socket itself "got burned up" in the initial incident, and there was soot on the cell walls, no other contents of the cell were burned. (Wexford SOF ¶ 16; Boyce Dep. at 3, 6.) No inmates in surrounding cells called for help because of the fire or smoke. (Boyce Dep. at 7.) The outlet continued to smoke until it was repaired on March 15, 2012.[4]

Boyce states that Ralph Burkybile, apparently shortly after the outlet malfunction, noticed a smell of "burning tires" coming from cell F122 but did not render assistance. (IDOC SOF ¶ 30.) Over the next several months, even after the outlet was repaired, Boyce wrote letters and grievances regarding the outlet. (Pl. Resp. IDOC SOF ¶¶ 31, 36-42; *see also* Wexford SOF ¶ 70.) The first grievance of record related to the outlet, however, is dated March 12, 2012, (Wexford SOF ¶ 70; Boyce Dep. 29-30), just three days before it was repaired. When pressed to explain the apparent delay in pursuing the available grievance process, Boyce said, "[w]hen you're faced with a situation like that, you're not thinking about a grievance. You're thinking about your life, . . . how to stay alive." (Boyce Dep. at 30.)

### 4. Medical Care

An inmate seeking medical care could either submit, in a provided box in the cell house, a written medical request to the Stateville Healthcare Unit ("HCU"), or make a request of medical technicians in the cell house. (Wexford SOF ¶ 8.) The inmate would then be scheduled for a

---

[4] The length of time the outlet malfunctioned appears to be disputed. IDOC Defendants contend that outlets were "always" repaired within 24 hours (IDOC SOF ¶ 28), but Boyce counters this, citing a work order for electrical work that states "inmates in cell F122 claim electrical outlet has a tendency to spark up and smoke," that appears to be dated March 4, 2012, eleven days before Boyce asserts (without apparent evidentiary contradiction in this record) that his outlet was repaired. (Pl. Resp. IDOC SOF ¶ 28; *see also* Boyce Dep. at 6.) For the purposes of this order, the Court assumes Boyce's timeline to be correct.

"sick call" visit with a medical professional.  (*Id.*)  No one told Boyce he could obtain treatment by writing to Wexford's Chief Executive Officer.  (*Id.* ¶ 11.)

In late February and into March, 2012, Boyce wrote letters addressed to various Wexford Defendants, in which he asks for treatment as to a burn and/or chest pain or tightness.  (*See, e.g.,* Pl. Resp. Wexford SOF ¶¶ 9, 10, 11, 18 (citing R. 199, Pl. Decl. ¶¶ 2, 4).)  The Wexford Defendants did not personally review any letters or written requests for medical care from Boyce between February 23 and April 6, 2012.  (Wexford SOF ¶¶ 9, 10, 46, 54, 59.)  Wexford's risk management department responded to one of Boyce's letters to Hale, advising Boyce to follow established sick call process and grievance procedures if he sought treatment.  (*Id.* ¶ 48.)

Boyce contends that his then-cellmate, Mark Downs, informed Williams of Boyce's need for treatment during Downs's sick call appointment with Williams on March 9.  (Pl. Resp. Wexford SOF ¶ 10; R. 59 at 13; R. 200 at 21 (Downs Decl.))  Boyce was not present for any part of this conversation.  (Wexford SOF ¶ 17.)[5]  Williams did not document any encounter with Boyce between February 23, 2012, and April 5, 2012, although it would have been her practice to document any such encounter.  (Wexford SOF ¶ 61-62.)  Williams disclaims any "subjective knowledge of Plaintiff's alleged medical conditions at issue in the present lawsuit until April 6, 2012."  (*Id.* ¶ 60.)

Dr. Carter did not see Plaintiff for any medical evaluation between February 23, 2012 and May 10, 2012, when Dr. Carter resigned from Stateville.  (Wexford SOF ¶ 51.)  Boyce never met Mark Hale, Wexford's then-president and chief executive officer.  (Wexford SOF ¶¶ 6, 41.)

---

[5] Defendants contend that Downs's testimony constitutes inadmissible hearsay (R. 194, at 10 n.5), but the Court disagrees.  *See Harden v. Marion Cnty. Sheriff's Dep't*, 799 F.3d 857, 861 (7th Cir. 2015) ("Evidence that is 'used only to show notice' is not hearsay.") (citations omitted.)

It appears to be undisputed for the purposes of summary judgment that Boyce was not examined by non-psychiatric medical personnel between February 24, 2012, and April 2, 2012. (*See* Wexford SOF ¶ 18.)   On April 2, 2012, Plaintiff saw a nurse, who is not a Defendant, complaining of a burning pain in his chest; she provided him with antacids and scheduled him for sick call.   (Wexford SOF ¶ 18, Ex. F at 1.)   The nurse's progress notes do not reflect that Boyce sought treatment for a burn.   (Wexford SOF ¶ 18, Ex. F at 1.)[6]   On April 6, 2012, Plaintiff saw Defendant Williams for a medical evaluation.   (Wexford SOF ¶ 19.)   Williams' notes reflect that Boyce reported "a burning in my chest do [sic] to electrical fire in my cell for 21 days, back in February" and, also "back in February," "I got a burn on my L hand do [sic] to sparks."   (*Id*. ¶ 20, Ex. F at 2.)   Plaintiff further reported that "tummy still bothers from time to time," but "last meds you gave helped me."   (*Id*. ¶ 20, Ex. F at 2.)   Finally, Plaintiff stated that he had "pain" in "L wrist off and on over the past several months or so."   (*Id*. ¶ 20, Ex. F at 2.)   Williams's examination revealed no abnormalities; she diagnosed Plaintiff with an "alteration of comfort" (which the Court understands to mean "discomfort") in his abdomen and left wrist.   (*Id*. ¶ 21, Ex. F. at 2.)   She prescribed Bentyl, for abdominal discomfort, and Tylenol 325 mg and analgesic balm, for pain.   (*Id*. ¶ 22, Ex. F at 2.)   Williams did not diagnose Boyce with smoke inhalation or a burn injury.   (*Id*. ¶¶ 21, 64.)

Plaintiff next saw Williams on August 10, 2012, when Plaintiff complained of neck pain, lower lip pain, and chest pains, after a reported suicide attempt.   (Wexford SOF ¶¶ 23-24.) Williams prescribed Tylenol 325 mg, analgesic balm, and Bentyl, and scheduled Plaintiff for a chest x-ray that came back negative for abnormalities.   (Wexford SOF ¶¶ 26-27.)   At Plaintiff's

---

[6] Although Plaintiff insists that he told the nurse of his burned hand and attributed his chest pain to smoke inhalation (Pl. Resp. Wexford SOF ¶ 18), any potential factual disputes regarding these issues are immaterial to whether any named Defendant was deliberately indifferent to Plaintiff's serious medical needs.

medical visits in March and June 2013, he did not complain of burning in his chest or a burned hand.   (Wexford SOF ¶¶ 28-31.)

## SUMMARY JUDGMENT STANDARD

All Defendants now move for summary judgment in their favor and against Boyce. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   A genuine dispute as to a material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact.   *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

After a properly supported motion for summary judgment is made, the party opposing summary judgment "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.   To do so, the opposing party must go beyond the pleadings and designate specific facts showing the existence of a genuine issue for trial.   *Hemsworth*, 476 F.3d at 490.   Moreover, evidence submitted in opposition to summary judgment must be admissible at trial under the Federal Rules of Evidence, although attested testimony, such as that found in depositions or affidavits, also will be considered.   *Id.*; *Scott v. Edinburg*, 346 F.3d 752, 759-60 & n.7 (7th Cir. 2003).   The Court's job as to "a summary judgment motion is not to weigh evidence, make credibility determinations, resolve factual disputes and swearing contest, or decide which inferences to draw from the facts."   *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). Although a Court considers facts and reasonable inferences in the light most favorable to the non-moving party, *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 649 (7th Cir. 2014), the

13

non-movant must show more than disputed facts to defeat summary judgment—disputed facts must be both genuine and material. *Scott v. Harris*, 550 U.S. 372, 380 (2007). Summary judgment is appropriate if, on the evidence provided, no reasonable juror could return a verdict in favor of the non-movant. *Celotex Corp.*, 477 U.S. at 322; *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772-73 (7th Cir. 2012).

## ANALYSIS

The Wexford Defendants argue that summary judgment in their favor is appropriate, first, because Boyce failed to exhaust administrative remedies regarding his claim that they were deliberately indifferent to his medical needs, and, second, because they were not deliberately indifferent to Boyce's serious medical needs. The IDOC Defendants[7] argue that they are entitled to summary judgment because: (1) Boyce's claims regarding the dysfunctional window and soiled mattress in cell F122 do not rise to the level of constitutional violations; (2) Boyce lacks sufficient admissible evidence regarding the outlet malfunction, entitling Defendants Burkybile and Mahalik to summary judgment; and (3) Defendants Hardy, Godinez, Louch, Dethrow and Johnson do not have sufficient personal involvement to be found liable for a constitutional violation.

## I.      Exhaustion

The Wexford Defendants first argue that Plaintiff failed to exhaust his administrative remedies as to his claims against them, as required by the Prison Litigation Reform Act (PLRA). *See* 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 87, 90 (2006) (citing *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Failure to exhaust is an administrative

---

[7] Although Defendant Ralph Burkybile's name does not appear in the title of the summary judgment submissions by the IDOC Defendants, all filings were made on his behalf. (R. 188, 189, 190, 191.) Frederick Nash, who is no longer a Defendant (R. 57), is inadvertently named in some of the IDOC Defendants' filings as well. The Court will not address any arguments as to Nash.

defense that Defendants must plead and prove. *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). Exhaustion requirements are set by prison grievance systems in each state, *see Jones v. Bock*, 549 U.S. 199, 218 (2007), and "[a] prisoner must comply with the specific procedures and deadlines established by the prison's policy." *King v. McCarthy*, 781 F.3d 889, 893 (7th Cir. 2015).

Illinois' administrative remedy is set forth in the Administrative Code. 20 Ill. Admin. Code § 504.800, *et seq*. Generally, a prisoner first should attempt to resolve any grievance informally by speaking to a counselor, 20 Ill. Admin. Code § 504.810(a), and, if that does not resolve his dispute, he may seek review at the institutional level through a written grievance to a grievance officer, who makes a recommendation to the warden, the chief administrative officer (CAO) of the facility. *Id*.; *see also Roberts v. Neal*, 745 F.3d 232, 235 (7th Cir. 2014); *Owens v. Hinsley*, 635 F.3d 950, 955 (7th Cir. 2011). If the CAO's response does not resolve the issue to the inmate's satisfaction, he may appeal to the Administrative Review Board (ARB).

Alternatively, when an inmate believes he is raising an emergency issue, he may bypass the counselor and grievance officer and submit his grievance directly to the CAO. 20 Ill. Admin. Code § 504.840; *Roberts*, 745 F.3d at 236. If the warden agrees that the grievance related to an emergency, *e.g.*, an issue presenting "a substantial risk of serious personal injury or other serious irreparable harm to the offender," the grievance handling is expedited. 20 Ill. Admin. Code § 504.840. If the CAO finds that the grievance does not present an emergency, a prisoner may appeal that rejection to the ARB. *See Thornton v. Snyder*, 428 F.3d 690, 694 (7th Cir. 2005); *see also* 20 Ill. Admin. Code § 540.840.

The Wexford Defendants here concede that "Plaintiff submitted several grievances" prior to filing this lawsuit, (Wexford SOF ¶ 70), although they do not identify those grievances or their substance. Defendants contend that Boyce did not "properly appeal" the grievances because the ARB responded only by requesting additional documentation and did not reach the substance of Plaintiff's complaints. (R. 194 at 6; Wexford SOF ¶¶ 71, 72.) Boyce did not exhaust, Defendants assert, "because he did not receive a final determination from the ARB regarding his grievances" before filing suit. (R. 194, at 6; Wexford SOF ¶ 73.) Boyce, also without specifically identifying the grievances and responses at issue in the record, contends that he submitted his grievances as emergency grievances to Defendant Hardy and that Hardy found them to raise non-emergent concerns. (Pl. Resp. Wexford SOF ¶¶ 70-73; R. 200 at 5; R. 199 at 25.) He then appealed those decisions to the ARB, which he argues fully exhausted the available administrative remedies. (R. 200, at 5; R. 199 at 25.)

Defendants have not met their burden of pleading and proving Boyce's failure to exhaust. The record is disorganized, and the Court cannot determine whether Boyce properly submitted all required documentation to the ARB (although Boyce's general description of his exhaustion efforts seems consistent with the record). (*See, e.g.,* R. 200 at 24-27, 45-49, 68, 70-75, 78-80.) Therefore, the Court declines the invitation at this stage to find that Boyce has not exhausted his administrative remedies. For purposes of finality and to conserve the Court's resources, the Court will address the merits of the Plaintiff's claims against the Wexford Defendants. *See Fluker v. County of Kankakee*, 741 F.3d 787, 793-94 (7th Cir. 2013) (approving district court's decision to reach merits even after determining plaintiff had not exhausted administrative remedies prior to filing suit).

## II.    Deliberate Indifference to Serious Medical Need

The Wexford Defendants next move for summary judgment on the grounds that Boyce has not provided sufficient evidence that he suffered from an objectively serious medical condition and that, even if he did, has not shown that Defendants were deliberately indifferent to his condition.   (R. 194 at 6-16.)   "A prison official may be found in violation of an inmate's right to be free from cruel and unusual punishment if she acts (or fails to act) with 'deliberate indifference to [his] serious medical needs.'" *Conley v. Birch*, 796 F.3d 742, 746 (7th Cir. 2015) (alteration in original) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). This claim has objective and subjective components, which require a plaintiff to show (1) that he had an objectively serious medical condition; and (2) that officials acted with deliberate indifference to his corresponding medical needs.   *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000) (citing *Reed v. McBride*, 178 F.3d 849, 852 (7th Cir. 1999)).   The Court addresses these components in turn.

### A.    Objectively Serious Medical Need

The Wexford Defendants argue that Plaintiff did not demonstrate an objectively serious medical condition for the purposes of this claim.   (R. 194 at 7-8.)   "'A serious medical condition is one that a physician has diagnosed as mandating treatment or one that is so obvious that even a lay person would know that a doctor's attention was needed.'"   *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (quoting *Greeno v. Daley*, 414 F.3d 645, 652 (7th Cir. 2005)).   A condition also may be objectively serious if a "failure to treat it 'could result in further significant injury or the unnecessary and wanton infliction of pain.'"   *Hayes*, 546 F.3d at 522 (quotation marks and citation omitted).   Where, as here, an inmate relies upon a delay in treatment to show an objectively serious medical condition, he must show that the claimed delay had a detrimental

effect on or worsened his condition. *See Knight v. Wiseman*, 590 F.3d 458, 466 (7th Cir. 2009); *see also Reece v. Groose*, 60 F.3d 487, 491-92 (7th Cir. 1995) (stating in *dictum* that such evidence "goes to the objective component of the alleged medical-needs violation of the Eighth Amendment").

Neither a burn nor smoke inhalation is necessarily an objectively serious medical condition. Generally, minor burns have been held not to constitute a serious medical condition, whereas more significant burns may be deemed sufficiently serious to implicate the Eighth Amendment. *See Roberts v. Landrum*, No. 4:12-cv-129-RS-CAS, 2013 WL 6485308, at *7 (N.D. Fla. Dec. 10, 2013) (collecting cases). Similarly, mild smoke inhalation is generally not held to be a serious medical need, *see Planker v. Christie*, No. 13-4464 (MAS), 2015 WL 268847, at *20 (D.N.J. Jan. 21, 2015) (holding that allegations of failure to treat smoke inhalation following fire in prison unit "do not rise to the level of a serious medical need"), while other exposures to smoke that cause severe enough symptoms may be sufficiently serious, at least at the pleading stage, to state a serious medical need. *West v. Walker*, No. 06 C 4350, 2007 WL 2608789, at *5 (N.D. Ill. Sept. 4, 2007) ("The court will assume for the purposes of the motion to dismiss that the plaintiff's need for treatment of smoke inhalation amounted to a 'serious' medical need," where plaintiff alleged violent nausea, difficulty breathing, burning in esophagus, and pain in lungs"); *Jones v. Mitchell*, No. 93 C 405, 1994 WL 517202, at *5 (N.D. Ill. Sept. 20, 1994) ("[S]moke inhalation could be a serious medical need.").

The Wexford Defendants argue that, here, there is no objective medical evidence verifying that Boyce had a serious medical need from a burn or smoke inhalation. (R. 194, at 8.) Defendants emphasize that Williams's examination revealed no abnormalities, and her diagnoses

included an alteration of comfort in his abdomen and left wrist, not smoke inhalation or a burn. (Wexford SOF ¶¶ 21, 22, 64, Ex. F at 2.)   Moreover, a chest x-ray in August 2012 was "negative" for any abnormalities.   (Wexford SOF ¶ 27.)   Although Boyce's arguments regarding the seriousness of his conditions are largely conclusory, (R. 200 at 1-2), he appears to pin this component of his claim on Williams's notes from his examination on April 6, 2012.   (*See* Pl. Resp. Wexford SOF ¶ 21.)   Plaintiff suggests that Williams's notations, *i.e.*, "a burning in my chest do [sic] to electrical fire in my cell for 21 days, back in February" and, also "back in February," "I got a burn on my L hand do [sic] to sparks," (Wexford SOF ¶ 20, Ex. F at 2), reflect Williams's "clinical findings" that he was in a 21-day fire that caused a burn and chest pains. (*See* Pl. Resp. Wexford SOF ¶ 21.)

The notations at issue appear on the left portion of Williams' notes regarding Boyce's examination, in an area of the form that calls for both subjective and objective findings. (Wexford SOF Ex. F. at 2.)   Given the wording of the notations, which are in the first person and use "I" and "my" in describing Boyce's conditions, no reasonable juror could find that Williams was doing anything other than transcribing Boyce's reported symptoms, exactly as he reported them to her.   Accordingly, these notes of Boyce's subjective complaints do not provide "verifying medical evidence that shows that his condition worsened because of the delay."   *See Knight*, 590 F.3d at 466.

Boyce points to no objective medical evidence tending to verify that he had a serious medical condition from either a burn or smoke inhalation at all, much less that any delay in treatment worsened any such condition.   Without such evidence, Boyce has not demonstrated that he had an objectively serious medical condition.   *See id.*; *see also Gonzalez v. Hardy*, No. 11 C

8578, 2015 WL 6528112, at *6 (N.D. Ill. Oct. 27, 2015) (granting summary judgment to defendant doctor where plaintiff had produced only his own opinion that new shoes should give him less pain, without any supporting medical evidence); *Padilla v. Bailey*, No. 09 C 8068, 2011 WL 3045991, at *6 (N.D. Ill. July 25, 2011) ("[B]ecause [plaintiff] did not introduce 'verifying medical evidence that shows that his condition worsened because of the delay,' his claim fails.") (quoting *Knight*, 590 F.3d at 466)); *Powell v. King*, No. 5:03-CT-102-H, 2004 WL 3396206, at *2 (E.D.N.C. Aug. 10, 2004) ("The reports of medical professionals do not support Plaintiff's claim that he suffered serious injury as a result of smoke inhalation."). Accordingly, summary judgment will be granted to the Wexford Defendants. Because, absent a serious medical condition, any claim that the IDOC Defendants were deliberately indifferent to Boyce's serious medical needs also must fail, any such claims against the IDOC Defendants are likewise dismissed.

**B.     Deliberate Indifference of Wexford Defendants**

Although the Court is granting summary judgment as to all Defendants on this claim because Boyce had no objectively serious medical needs, the Court will, for judicial economy, address the subjective component of Boyce's claims as to the Wexford Defendants. For this component, neither negligence nor a bad result stemming from "a reasonable medical judgment" suffices to meet Boyce's burden. *Sherrod*, 223 F.3d at 611. Instead, a plaintiff must show that each defendant was aware of and consciously disregarded his medical need. *See Farmer*, 511 U.S. at 837; *Rowe v. Gibson*, 798, F.3d 622, 627 (7th Cir. 2015). The defendant therefore must know of "a significant risk to inmate health or safety," and nevertheless "administer[] 'blatantly inappropriate' medical treatment," "act[] in a manner contrary to the recommendation of

specialists, or delay[] a prisoner's treatment for non-medical reasons, thereby exacerbating pain or suffering." *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015) (internal citations omitted).

Boyce here does not argue that Williams did not appropriately treat him on April 6—he contends that he should have been evaluated sooner. (*See* R. 200, at 3 ("why did it take pliff to April 6, 12 to see Williams with severe burns and chest cardio pains which extremely hurts"). Plaintiff asserts that he wrote letters and grievances to and regarding Defendants Williams, Hale, and Dr. Carter, which put them on notice of his request for treatment long before he was treated on April 6, 2012. (*See, e.g.,* Pl. Resp. Wexford SOF ¶¶ 9, 10, 11, 18 (citing R. 199, Pl. Decl. ¶¶ 2, 4).) Boyce has not, however, refuted with competent evidence these Defendants' statements that they did not personally review any written request for treatment by him between February 23 and April 5, 2012. (Wexford SOF ¶¶ 46, 54, 59.)

Boyce points to no other evidence that Dr. Carter or Hale[8] knew of his requests for medical treatment. The Court, therefore, also grants summary judgment as to Defendants Carter and Hale on this issue, because there is no evidence that they had notice of Boyce's medical issues, much less responded in a deliberately indifferent manner. *See Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006) (noting that plaintiff had no evidence that defendant knew of plaintiff's conditions and communications because evidence showed that defendant "d[id] not review inmate correspondence related to grievances" but "delegated [that task] to subordinates").

For the same reasons, the Court grants summary judgment on this issue as to Williams for any claim based on a written request by Boyce for treatment. The facts are disputed, however, as to whether Williams may have gained knowledge of Boyce's alleged requests for medical

---

[8] Because Hale did not have medical training, it is unlikely that Boyce's communications would, in any case, have put him on notice as to any deficiency in Boyce's care or treatment. (*See* Wexford SOF ¶¶ 36-39.)

treatment from other sources as early as March 9, 2012. (*See* Wexford SOF ¶ 60 ("Williams had no subjective knowledge of Plaintiff's alleged medical conditions at issue in the present lawsuit until April 6, 2012."); Pl. Resp. Wexford SOF ¶¶ 59-69 (citing Pl. Decl., R. 199, at 20, ¶ 2 (referring to Declaration of Boyce's cellmate, Mark Downs, who stated that, during a March 9 examination with Williams, he informed her of Boyce's need for treatment for smoke inhalation)).

## III. Deliberate Indifference to Cell Conditions—IDOC Defendants Only

The IDOC Defendants argue that the Court should grant summary judgment as to Plaintiff's claims that they were deliberately indifferent to his health and safety due to the conditions of cell F122. (R. 188, 190.) An Eighth Amendment violation based on the conditions of an inmate's confinement occurs when two conditions are met: (1) the harm imposed by the conditions of confinement was "sufficiently serious" to deprive a prisoner of "the minimal civilized measure of life's necessities"; and (2) a prison official acted with "deliberate indifference" to the inmate's health and safety resulting from those conditions. *See Farmer*, 511 U.S. at 834. "[C]onditions of confinement, even if not individually serious enough to work constitutional violations, may violate the Constitution in combination when they have a 'mutually enforcing effect that produces the deprivation of a single, identifiable human need.'" *Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013) (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)).

Plaintiff states that cell F-122's conditions included a urine-, feces-, and ejaculation-ridden mattress, a window that did not close and caused his cell to be cold, and an electrical socket that "burned for 21 days, from February 24, 2012 until March 15, 2012." (Dkt. 190, at 1-2.) The IDOC Defendants contend that the conditions of the window and mattress, as described by Plaintiff, are insufficient to implicate the Constitution. (*Id*. at 4-5.) The IDOC Defendants further

argue that "the testimony of a Mark Mahalik proves" that, contrary to Plaintiff's version of events, Plaintiff's socket could not have burned for 21 days. (*Id*. at 5-7.) Finally, these Defendants argue that Defendants Hardy, Godinez, Louch, Dethrow and Johnson do not have sufficient personal involvement to be found liable for a constitutional violation. (*Id*. at 8-10.) The Court will take Defendants' arguments in turn.

## A. Sufficiently Serious Condition

### 1. Broken Window

A claim based on low cell temperature requires consideration of factors such as: (1) the severity of the cold; (2) the duration of the cold temperatures; (3) whether the inmate has alternative means to protect himself from the cold; (4) the adequacy of any such alternative means; and (5) whether he must endure additional uncomfortable conditions in addition to the cold. *Dixon v. Godinez*, 114 F.3d 640, 644 (7th Cir. 1997). Enduring temperatures cold enough to freeze water and to prevent simple daily tasks for multiple winters are sufficient to meet this standard. *Id.* at 644. Similarly, inside temperatures nearing freezing and outside wind chills reaching well into the negative double digits, combined with non-functioning heaters or a lack of clothing are sufficient. *See id.*; *Del Raine v. Williford*, 32 F.3d 1024, 1031, 1035-36 (7th Cir. 1994); *Henderson v. DeRobertis*, 940 F.2d 1055, 1056-60 (7th Cir. 1991). Nonetheless, mere discomfort or the mere fact that a prisoner must "bundle up indoors during the winter does not mean that prison conditions violate the Eighth Amendment." *Dixon*, 114 F.3d at 644; *see also Mays v. Springborn*, 575 F.3d 643, 648 (7th Cir. 2009) ("Mays did not show that he was forced to be in the cold for long periods of time or that he suffered anything more than the usual discomforts of winter.").

Here, the record contains little evidence responsive to the above factors. No party describes actual indoor temperature readings in or around Plaintiff's cell. The IDOC Defendants argue that Plaintiff "does not allege what the temperature in his cell was" or assert "that it was anything more than just chilly." (R. 190, at 5; *see also* IDOC SOF ¶ 13.) Plaintiff vigorously disputes this characterization, pointing to his submissions of outside weather temperatures and his own declaration, in which he states that the cell was "very cold blowing in cell" and that he had "no blanket." (Pl. Resp. IDOC SOF ¶ 13 (citing Plaintiff's supporting declaration.)) On this record, Plaintiff has raised a disputed issue of fact regarding whether the broken window led to cold that was sufficiently serious. *See Hopkins v. Klindworth*, 556 F.App'x 497, 499 (7th Cir. 2014) (finding plaintiff's allegations of cold air seeping into cell through broken window for two weeks during frigid winter where guards ignored requests for repair of window sufficient to state claim) (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1433 (7th Cir. 1999); *Murphy v. Walker*, 51 F.3d 714, 721 (7th Cir. 1995); *Walker v. Schult*, 717 F.3d 119, 127-28 (2d Cir. 2013)). The Court denies summary judgment is denied as to this claim.

### 2. Soiled Mattress

"[A] lack of sanitary conditions, including clean bedding, may qualify as a denial of the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 774 (7th Cir. 2008) (quotation marks and citations omitted). Although bedding that is uncomfortable or merely used is insufficient to state a constitutional claim, *see Burton v. Downey*, -- F.3d --, No. 14-3591, 2015 WL 5894126, at *8 (7th Cir. Oct. 8, 2015) (finding no evidence that failure to provide second mattress amounts to deprivation of constitutional magnitude); *Barbosa v. McCann,* No. 08 C 5012, 2011 WL 4062469, at *7 (N.D. Ill. Sept. 12, 2011), having bedding that is foul-smelling

or contaminated with bodily fluids may be sufficient. *See Townsend*, 522 F.3d at 774 (finding sound the parties' shared assumption that inmate having "wet, moldy, foul smelling mattress" for 59 days was sufficiently serious to implicate Eighth Amendment); *see also Moore v. Harrington*, No. 15-CV-092-JPG, 2015 WL 758489, at *5 (S.D. Ill. Feb. 23, 2015) (holding that 90 days with "filthy mattress and pillow which exposed [plaintiff] to the odor of urine; the dirty cell, toilet, and sink, and lack of any supplies to clean them; and the inadequate water supply," combined, "satisfies the first element of an Eight Amendment claim") (citing *Jackson v. Duckworth,* 955 F.2d 21, 22 (7th Cir. 1992)); *Hempstead v. Spiller*, No. 15-CV-278-JPG, 2015 WL 1594064, at *3 (S.D. Ill. Apr. 7, 2015) (holding that knowingly placing plaintiff in contaminated cell with unsanitary mattress and bedding for thirty days stated claim). Where, however, an inmate is provided with adequate cleaning supplies or other means to alleviate unsanitary conditions, the Constitution will not be implicated. *See Thomas v. Winters*, No. 04-3186, 2006 WL 2547961, at *8 (C.D. Ill. Aug. 31, 2006) (finding no Eighth Amendment violation where soiled mattress was covered by clean sheet weekly); *see also Myrick v. Anglin*, 496 F.App'x 670, 675-76 (7th Cir. 2012) (noting that plaintiff did not allege that provided cleaning supplies were insufficient to clean his cell, although plaintiff did not receive other requested supplies).

Here, Defendants characterize the mattress in cell F122 as merely "dirty" and state that "Plaintiff does not allege how long the mattress was in his cell, or even whether Plaintiff used the mattress." (R. 190, at 5; IDOC SOF ¶ 11.) As an initial matter, Defendants' assertion is incorrect; in his amended complaint, Plaintiff stated that he had to "sleep with the mattress over him" and says the conditions persisted "for almost 85 days." (R. 59 ¶ 40.) Moreover, Plaintiff did not rely upon his allegations in disputing Defendants' argument but pointed to evidence in the

record.   (Pl. Resp. SOF ¶ 11 (citing Pl. Decl.); R. 199, at 12, ¶ 4 ("[P]laintiff was forced to keep this matter [sic] for 85 days."))   Defendants' motion is denied as to this claim.

### 3.     Outlet Malfunction

Defendants do not contend that enduring a sparking or smoking outlet could not be sufficiently serious to implicate the Constitution.   Instead, they argue that "Plaintiff provides no evidence of this claim of a 21 day fire,"[9] and that a declaration from Mark Mahalik "proves otherwise."   (R. 190, at 5; *see* IDOC SOF ¶ 15.)   Defendants rely upon Mahalik's statements that: (1) when an electrical socket at Stateville shorts out, it causes all outlets in a four-cell group to short out until the malfunctioning outlet is repaired; (2) when an outlet shorts out, the plastic covering may melt and smoke, but electricity is cut off within seconds; and (3) damaged sockets were generally repaired the day they shorted out, but "always" within 24 hours.   (R. 190, at 6-7.) Thus, Defendants conclude, any claim that "the electrical socket in [Boyce]'s cell burned for 21 days" is impossible, entitling Defendants to summary judgement.   (*Id*. at 7.)   The Court agrees with Defendants up to a point—their evidence undermines the already-dubious claim that there was a 21-day "fire" in cell F122.

Boyce has not successfully created a genuine factual dispute regarding whether his cell was on fire from February 24 through March 15, 2012.   Boyce again relies on Williams's notes from her April 6, 2012, examination of Boyce as support that she found that he was in a 21-day fire.   (*Id*.)   The Court has already found, however, that no reasonable juror could agree with Boyce's interpretation of these notes.   Boyce's claims of a "21-day fire" also conflict with his

---

[9] This is puzzling, as Plaintiff was deposed and testified as to his observations.   It is unclear why Defendants deem this not to be evidence.

deposition testimony that, after an initial flame spurt, he saw only smoke coming from the outlet. (Boyce Dep. 6, 22-23.)   In any case, no reasonable juror could find that Boyce's cell was "on fire" for 21 days.   *Compare Jones,* No. 93 C 405, 1994 WL 517202, at *6 ("It is difficult to believe that a 'big fire' could be started by inmates and burn in a prison for two hours."). Defendants are entitled to summary judgment on this issue.   *See* Fed. R. Civ. P. 56(g).

Although there is no genuine dispute as to whether flames continued to threaten Boyce after the initial outlet malfunction, there is evidence that: (1) the outlet malfunctioned; (2) the malfunction happened days before it was repaired; and (3) the outlet may have continued to smoke (potentially for days or weeks) beyond the initial malfunction.   First, Boyce testified that the outlet malfunctioned and then smoked until its repair.   (Boyce Dep. at 6, 15, 22-23.)   Second, Boyce cites record evidence suggesting the electrical socket was not repaired within 24 hours—a maintenance form, purportedly written by a non-defendant correctional officer on March 4, 2015, requesting repair of the socket in F122.   (Pl. Resp. IDOC SOF ¶ 28.)   The IDOC Defendants offer no explanation for this form.   Finally, Boyce has consistently asserted (without contravention from the IDOC Defendants) that the outlet was repaired on March 15, well over 24 hours after the date of the malfunction and form.   (Boyce Dep. at 6.)   A reasonable jury could find that the outlet smoked for days and posed enough of a risk of harm to Boyce to implicate the Constitution.   Summary judgment as to that issue is denied.

### B.      Deliberate Indifference

The IDOC Defendants finally contend that Defendants Hardy, Godinez, Louch, Dethrow and Johnson lack sufficient personal involvement with the cell conditions to be found liable for a constitutional violation.   (R. 190, at 8-10.)   Section 1983 is premised on the wrongdoer's

personal responsibility. Therefore, an individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation. *Kuhn v. Goodlow*, 678 F.3d 552, 556 (7th Cir. 2012) (citations omitted). The doctrine of *respondeat superior* (blanket supervisory liability) does not apply to actions filed under 42 U.S.C. § 1983. *See, e.g., Kinslow v. Pullara,* 538 F.3d 687, 692 (7th Cir. 2008).

The IDOC Defendants first argue that an officer's mere denial of a grievance is insufficient for liability. (R. 190, at 9.) However, "[w]hile the denial alone is insufficient to establish liability, ignoring or failing to conduct an investigation of an inmate's grievance can indicate personal involvement in a constitutional violation. *Hoddenback v. Chandler*, No. 11 C 50348, 2013 WL 5785598, at *3 (N.D. Ill. Oct. 28, 2013) (citing *Santiago v. Walls,* 599 F.3d 749, 758–59 (7th Cir. 2010)). Plaintiff here cites to grievances (and letters) that he appears to have written to Defendants about his cell conditions, and it appears to be undisputed that the CAO denied the emergency nature of Plaintiff's claims. (*See* Pl. Resp. IDOC SOF ¶¶ 31, 37-42.) This evidence is sufficient to create a genuine issue of fact as to Defendant Hardy's personal involvement.

Defendants also argue that Plaintiff has no evidence that Defendants received Plaintiff's letters or otherwise knew of the conditions of cell F122. But, again, Plaintiff has submitted and cited to the written communications, and the IDOC Defendants have provided no evidence that they did not receive them. The IDOC Defendants' motion for summary judgment on this issue is denied.

## CONCLUSION

For the reasons stated in this Memorandum Opinion and Order, the Court dismisses Plaintiff's claims of deliberate indifference to his serious medical needs as to all named Defendants. The Wexford Defendants' motion for summary judgment [193] is granted in its entirety, and Defendants Hale, Williams and Carter are dismissed. The IDOC Defendants' motion for summary judgment [188] is granted in part and denied in part. Plaintiff's "motion to strike a particular part of pliffs response to Defendants summary judgment" [211] is denied as moot, as the portions Plaintiff seeks to strike did not enter into the Court's review of the merits the summary judgment motions.

**Dated:** November 20, 2015

ENTERED

AMY J. ST. EVE
United States District Court Judge

29